No. 10,392.

## THOMAS P. LEATHERS vs. JOHN JANNEY ET ALS.

1. No law prevents a corporation from selling any or all of its property, provided the charter contains no prohibition thereof and it acts in accordance with the duly expressed will of its stockholders and directors.

2. The same person may fill the offices of President of two distinct corporations and such identity does not, of itself, invalidate dealings between the two corporations.

3. When one corporation sells property to another for a fixed price, to be paid in stock of the latter to be delivered to the former through its designated officer, delivery of the certificates of stock to such officer or to another by his order, operates a discharge for the price.

4. Corporate property is held subject to corporate debts, and when a corporation sells its whole property and rights to a purchaser knowing the fact, equity, in proper cases, will subject the property in the hands of the purchaser to the payment of the debts with which it is charged; but the purchaser of specific property, such as a steamboat, from a corporation, is not bound to follow the price paid into the hands of the selling corporation, and see to its distribution amongst the latter's stockholders, in absence of fraudulent connivance between the purchaser and seller to wrong the stockholders.

5. The sale attacked in this case being real and fair, for a sound price duly paid to the seller according to the terms of the contract, and without a shadow of fraud on the part of the purchaser, the latter is not bound for any failure of duty of the officers of the selling corporation in distributing the proceeds amongst its stockholders.

APPEAL from the Civil District Court, for the Parish of Orleans. *Righter*, J.

---

### *O. B. Sansum* for Plaintiff and Appellant:

Shares of the capital stock of a corporation pledged to secure a *bona fide* debt, fix a corporate liability in favor of the pledgee, and an unlawful transfer thereof is a breach of corporate duty, for which the corporation is liable.

Corporations hold all their property, effects and assets in trust for their creditors and shareholders. All such assets, property and effects are to be devoted first, in payment of corporate debts and liabilities; and if, after satisfying debts and liabilities, there be a residue, it belongs to the shareholders.

Holders of the capital stock of a corporation can take no part of corporate assets until every corporate debt and liability has been paid and satisfied; and, if this rule be disregarded, creditors may follow the corporate property, or its proceeds, wherever found, and subject them to the payment of corporate debts and liabilities, unless they be in the hands of *bona fide* purchasers for a fair and reasonable consideration.

While it is true the plaintiff holds the affirmative of every issue of fact and must support them by a preponderance of testimony, yet, in determining whether plaintiff's testimony overbalances the defendant's, upon such an issue, the Court must regard all the circumstances surrounding both parties, and if the Court is satisfied that one of the parties in dealing with the other has been guilty of great moral turpitude, the Court will declare in favor of the party whose conduct appears to have been governed by integrity

---

### *Richard De Gray* on same side:

" A corporation is the custodian and trustee of the corporate funds, property and stock for

the stockholders; it is bound to employ competent and faithful transfer agents ( and officers) to their injury. In case of illegal and unauthorized transfer of stock to a third person, the injured stockholder may contest the title of the transferee, contradictorily with both the latter and the corporation; but he is not confined to this remedy. It has been frequently held that he may sue the corporation alone for the value of his stock illegally transferred." 35 Ann. 238.

Pledges of stock are good by the mere delivery of the certificates, and such mere delivery interdicts the corporation from transferring the stock on the books of the company, except upon the surrender of the certificate, or upon proof of its loss or destruction. No notice of the transfer is necessary. 30 Ann. 1375; 31 Ann. 151; 33 Ann. 1286.

It is the duty of the company to have the surrender of the old certificate before the re-issuance and delivery of the new certificate. If the old certificate is not produced, an inquiry should be instituted as to its whereabouts; and "where it is their duty to inquire, the party is charged with full knowledge |of all which he would have discovered had he performed that duty." 17 Wallace, p. 8.

Stock in a corporation is not in the nature of commercial paper, but the right to the same is rather in the nature of a non-negotiable chose in action. 96 U. S. R., p. 196.

*Farrar, Jonas & Kruttschnitt* for Defendants and Appellees :

1. If plaintiff's action is anything known to the law of Louisiana it is the revocatory action or *Actio Pauliana*. As such it is prescribed by one year. C. C., Article 1994; Byrne & Co. vs. Creditors, 33 Ann. 198; Brewer vs. Kelly, Administratrix, 24 Ann. 246.
2. Destruction of the thing which is the object of the action by a fortuitous event relieves the defendant of the result of the action.
3. Insurance on the thing does not represent the thing or follow the thing. It is a contract of indemnity personal to the insurer. King vs. Preston, 11 Ann. 95.
4. The evidence shows (a) that the defendants were guilty of no fraud, expressed or implied; (b) that Leathers must have had knowledge of this whole transaction at the time it was made; (c) that the Planters' and Merchants' Packet Company being without knowledge of Leathers' alleged rights, owed him no duty, expressed or implied.

The opinion of the Court was delivered by

FENNER, J.    Prior to June, 1885, there existed three distinct corporations, viz: the New Orleans, Baton Rouge and Bayou Sara Packet Company, the Merchants' and Planters' Packet Company, and the Coast and Mississippi River Packet Company, each of which owned and operated a steamboat.

Desiring to put an end to disastrous competition, the stockholders in these three corporations, agreed to form a new corporation which should acquire the ownership of all three boats at valuations fixed in advance and run them in a common interest.

Accordingly on June 22, 1885, a new corporation was formed in accordance with the laws of the State, styled the Planters' and Merchants' Packet Company, having a stock equal to the combined valuation of the three boats above mentioned, viz: $110,000 in shares of $100 each, and

its objects are declared to be " the building, running, purchasing, chartering, hiring, running and selling one or more steamboats, etc."

On June 30, 1885, at a special meeting of the stockholders and directors of the New Orleans, Baton Rouge and Bayou Sara Packet Company, a resolution was adopted authorizing John J. Brown, manager, to sell the steamboat Ed. J. Gay to the Planters' and Merchants' Packet Company, for the sum of fifty thousand dollars in full paid up stock of said company.

On the same day, in pursuance of above resolution, Brown, Manager, executed a deed of sale of the Gay to the Planters' and Merchants' Company, upon the consideration, by him declared in the act, " of fifty thousand dollars in full paid stock of the Planters' and Merchants' Packet Company, to represent which stock the said company have issued and delivered to me on behalf of said New Orleans, Baton Rouge and Bayou Sara Packet Company, certificates for 500 shares of the amount of $100 each of said capital stock paid up, the receipt of which I do hereby acknowledge, etc."

John Janney, the defendant, was a stockholder in the New Orleans, Baton Rouge and Bayou Sara Packet Company, and in 1884 had delivered to Thomas P. Leathers, to whom he was indebted, the certificate for 120 shares of said stock, in pledge.

The stock received from the Planters' and Merchants' Company in payment for the Ed. J. Gay, was distributed among the stockholders of the New Orleans, Baton Rouge and Bayou Sara Packet Company, by Brown, or under his direction, and Janney received the whole amount thereof coming to him, without being required to produce the certificate held in pledge by Leathers.

Brown was the manager of the New Orleans, Baton Rouge and Bayou Sara Packet Company, and was also chosen as manager of the new company.

The plaintiff filed the petition in this suit against John Janney, the New Orleans, Baton Rouge and Bayou Sara Packet Company and the Planters' and Merchants' Packet Company. This petition first sets forth the indebtedness of Janney and the pledge of the stock, and then sets up that Brown was president and manager of the New Orleans, Baton Rouge and Bayou Sara Packet Company, and that he was also president and manager of the Planters' and Merchants' Packet Company.

That, June 30th, 1885, Brown, as the manager of the New Orleans, Baton Rouge and Bayou Sara Packet Company, pretended to convey and sell all the property of that corporation, to wit: the steamer Edward J. Gay, to the Planters' and Merchants' Packet Company for

50,000 shares of the capital stock of the last named company, and that nothing was in fact paid by the latter to the former corporation.

That Brown being at the same time manager and president of both corporations, acted in the double capacity of seller for the one and buyer for the other corporation (10).

That the New Orleans, Baton Rouge and Bayou Sara Packet Company had no property but the steamer .Edward J. Gay; and the sale thereof was *ultra vires* and void, and that it was a fraud against plaintiff's rights in the premises (11).

The petition prays citations against all the defendants and judgment against Janney for $4350 83, with interest from September 8th, 1886, and for a lien and privilege on the steamboat and a lien and privelege on all the property of the Planters' and Merchants' Packet Company, and that the same be seized and sold to pay plantiff's demand, interest and costs, unless property of the defendant Janney be found to satisfy the demand, and for general relief (12).

The plaintiff recovered a judgment against Janney with lien and privilege on 120 shares of the stock of the New Orleans, Baton Rouge and Bayou Sara Packet Company, but was denied other relief, from which judgment he appeals.

Let us examine the grounds as set forth in the petition on which the claim against the Planters' and Merchants' Company and its property is based. They are:

1. That the sale of the Gay was pretended and fictitious. The sale was real, for a valuable consideration of amply sufficiency and duly paid, and the charge is simply frivolous.

2. That Brown was the manager of both the corporations which were parties to the sale. As he acted under full authority from the directors and stockholders of each corporation, we perceive no legal significance in this fact and no principle of law or authority is cited to give it any force whatever.

3. That the sale was of the whole property of the selling corporation and was, therefore, *ultra vires* and void. The inference does not follow from the predicate. There is no law prohibiting a corporation from selling any or all of its property provided its charter contains no restraint thereof and it acts under proper authority.

4. That the sale was made in fraud of plaintiff's rights.

The evidence conclusively shows that the sale was, in itself, as honest and fair a transaction as ever took place. Nobody connected with it, with the exception of Janney, had notice or knew in any way of the pledge of Janney's stock to Leathers. The sale was public and notori-

ous, commented on in the newspapers, and evidenced by the conspicuous inscription of the new corporation's name upon the wheel-houses of the steamboats purchased. The purchaser exacted from the selling corporations an indemnifying bond against all debts, which was given, and it is not pretended that the New Orleans, Baton Rouge and Bayou Sara Packet Company has not paid every one of its corporate debts.

Before the sale, Janney himself, had consulted his then friend, the plaintiff, about the transaction and the valuations placed on the different boats, which is admitted by plaintiff, though he says he did not understand that there was to be a sale to a new corporation. We are satisfied that no notion existed even in the mind of Janney of wronging plaintiff or prejudicing his pledge, until some time after the consummation of the sale. He did not apply for or receive the shares of new stock coming to him until several months after the sale had been consummated.

In concealing the fact of the pledge and in taking the stock without providing for the protection of Captain Leather's rights, he, no doubt, committed a wrong. It may be claimed that in permitting and directing the delivery of the new stock to Janney without exacting the surrender of the old certificate, Brown, and the New Orleans, Baton Rouge and Bayou Sara Packet Company, incurred liability to Leathers; but no judgment appropriate to this liability is claimed in this suit, and the judgment appealed from specially reserves the rights of Leathers against them.

But what responsibility in the premises attached to the Planters' and Merchants' Packet Company? It had bought the boat, in good faith, for the price of so many shares of its own stock, certificates of which were to be delivered to Brown as manager and representative of the selling corporation, receipt of which certificates was actually acknowledged in the act. If the certificates had been then delivered as so recited, no one would have had the hardihood to contend that the buying corporation would have had any further concern with their disposition.

Although it appears that the certificates had not been delivered, yet, after the sale, the stock stood as the property of the selling corporation, certificates for which were to be delivered, on demand, to Brown, as its manager, or to whomsoever he might direct. When such delivery was made, the obligation of the buying company was discharged.

The receipt of the stock by Janney under the authority of Brown was the same as the receipt by Brown, manager of the selling company, to whom the contract required they should be delivered. In so disposing of the certificates, Brown acted solely in his capacity as manager of the

selling company, which was the owner of the stock, and the buying company is, in no manner, affected by any failure on his part in his duty towards the stockholders of the selling company, with whom the former had no dealings and as to whom it was under no duty.

Authorities are quoted to the effect that when a corporation sells or transfers its entire property to a purchaser knowing the fact, the latter is chargeable with knowledge that the property is subject to the corporate debts and that equity will, in proper cases, allow the corporate creditors to follow the property in the hands of the purchaser for satisfaction of their claims. Mumma vs. Potomac, 8 Peters 281; Dammer vs. Wood, 2 Mason 381; St. Mary's Bank vs. St. John, 25 Ala. 566; Hackabee vs. Smith, 53 Ala. 191; Wood vs. Dammer, 3 Mass. 308; Vose vs. Grant, 15 id. 592; Story's Eq. Jur., 9 Ed.. Section 1252.

But no authority is quoted or exists, to the effect that the purchaser from a corporation is bound to follow the price into the hands of the seller and see to the just and proper distribution of it amongst the latter's stockholders. In absence of fraudulent connivance or collusion to wrong the stockholders, the purchaser discharges his obligation by paying the price to the competent officers of the selling corporation who are the agents of the stockholders and to whom the latter must look for the protection of their rights.

The case of Fee vs. Gas Co., 35 Ann. 238, has no application whatever to the questions here involved.

We, therefore, conclude that the plaintiff has no rights against the Planters' and Merchants' Packet Company or upon its property.

A violent conflict is found in the evidence as to the amount of the debt for which the stock of Janney was pledged. It is a simple case of direct and positive contradiction between witnesses on which the conclusion of the district judge should not be lightly disturbed. After carefully weighing the evidence we find no sufficient ground to disturb it; in so far as it confines the pledge to the amount due on the note.

The amendments asked in favor of Janney are supported only by inferential evidence, and as we think the judgment does substantial justice, we will leave it as it stands.

Judgment affirmed.