THEODORE W. PHILLIPS *vs.* PROVIDENCE STEAM ENGINE CO.

PROVIDENCE—MAY 14, 1899.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Corporations. Dissolution. Power of Majority of Stockholders to sell Property.*

When a corporation is no longer able to profitably continue its business, it has the power to sell its entire property by a majority vote of the stockholders, if such action on the part of the majority is free from unfairness, oppression, or fraud as to the minority of the stockholders.

(2) *Right of Minority Stockholder.*

In a suit by a minority stockholder to restrain the sale by the majority, on

the ground of inadequacy of the price, and praying that a receiver might be appointed and the property sold by auction upon a dissolution of the corporation ; in the absence of any proof that a larger price could reasonably be expected by an auction, or that any one is willing to bid as much as the price arranged for the sale, or that the complainant stands ready to bid or knows any one who would bid upon the property at such sale, no oppression or fraud by the majority being alleged, equity will not interfere to disturb the agreement.

(3)   *Adequacy of Price.*

The fact that the sale was approved by the stockholders by a vote of 3,675 shares against 75 tends to show the fairness of the price.
*Wilson* v. *Prop'rs Central Bridge,* 9 R. I. 590, distinguished.

BILL IN EQUITY to restrain a sale of the property of a corporation, ordered by a vote of the majority of the stockholders, brought by a minority stockholder. The facts are stated in the opinion. Heard on bill, answer, and replication. Bill dismissed.

STINESS, J.  The complainant, a stockholder, seeks to restrain the respondent corporation from disposing of its property. The company is doing business under an extension by its creditors, in the terms of which an installment becomes due in November next. It is agreed that this cannot be met, and that the company will be unable to go on in business because the creditors refuse a further extension. In view of these facts, an arrangement has been made to form a new company, in which creditors holding extension notes will take preferred stock to the extent of one-half of their claims, while other subscribers will furnish enough cash to pay for the plant and provide a working capital. The terms of the proposed sale give to the present stockholders $70,000 over and above the indebtedness of the company, amounting to about $228,000, making a total payment of about $298,-000. The estimates of the value of the property vary from $327,000 to $397,000, the latter being the complainant's estimate ; but it does not appear that either party has reason to expect that either sum would be realized at a forced sale. This is not a sale in which the other stockholders are to gain any advantage beyond the privilege, which is also offered to

the complainant, of taking his proportionate amount of cash
(3) or its equivalent stock in the new company, as he may prefer.
It is in effect a cash sale to strangers, approved by stock-
holders representing 3,675 shares against 75 held by the com-
plainant. While this majority cannot affect any rights to
which he is entitled, it tends to show a fair price. It is a
well-known result, to which courts of justice cannot be blind,
that large plants of this kind are often, if not usually, sold
at a great sacrifice in case of a forced sale. We should not
have to go outside of the records of our own court to find
proof of this fact. A sale being necessary, the question is
how shall it be made. The prayer of the bill is that a re-
ceiver may be appointed ; that the business may be wound
up and the company dissolved ; and the argument is that the
sale of the effects should be at public auction.

The question, then, is whether the complainant is entitled
to such a decree.

(1)    There is a difference of opinion as to the power of a corpo-
ration to sell its entire property and thus practically to retire
from business. Some courts hold that it may be done by the
consent of all the stockholders (Am. & Eng. Ency. L. 2 ed.
vol. 7, p. 734, note 1), and others hold that it may be done
by a majority. *Ditto*, notes 2, 3, and 4. All of the author-
ities cited in note 1, however, do not hold that the consent
of all the stockholders is necessary, *e. g. Treadwell* v. *Salis-
bury*, 7 Grey, 393 ; *Wilson* v. *Miers*, 100 Eng. Com. Law,
348, *et al.* But the editor adds : "There seems to be no
doubt that it may do so when it is no longer able to profit-
ably continue its business."

We think that this is the correct rule. It has been recog-
nized in this State. *Hodges* v. *N. E. Screw Co.*, 1 R. I.
312, 350. In *Wilson* v. *Prop'rs Central Bridge*, 9 R. I.
590, Brayton, C. J., said : "No case has been cited, and,
in view of the diligence of counsel in this case, we may
say there is no case which holds that where the purpose of
the incorporation could not be accomplished, the business
contemplated could not be carried on ; where the capital had
been exhausted in endeavors to go on, having no means to

go further; a company thus laboring under burdens which they could no longer bear, could not release themselves by a surrender of their franchise to the State which granted and which was willing to receive it, and that by a majority. This is not only for their benefit, but it is a necessity, and it would be hard indeed if one stockholder could by his dissent prevent such relief against the prayer of all other members of the company." In *Peabody* v. *Westerly Water Works*, 20 R. I. 176, a necessary limitation to this rule was recognized in the words: "The action of the company was taken by a vote of more than 1,100 out of a total of 1,350 shares. There is no proof of unfairness, oppression, or fraud in such action. The case as presented is simply that of a stockholder who differs from a large majority of his fellow stockholders as to the expediency of a sale."

The principle upon which these cases rest is that a corporation may dispose of its property by a majority vote, in cases which are free from unfairness, oppression, and fraud. Against wrongs of this kind equity will interfere. To this effect are *Lauman* v. *Lebanon R. R.*, 30 Pa. St. 42; *Treadwell* v. *Salisbury*, 7 Gray, 393; *Leathers* v. *Janney*, 41 La. Ann. 1120; *Sewell* v. *East Cape May Co.*, 50 N. J. Eq. 717, *Sargent* v. *Webster*, 13 Met. 497; *Warfield* v. *Marshall*, 72 Ia. 666; *Wilson* v. *Miers*, 100 Eng. Com. Law, 348; see also *Miner's Ditch Co.* v. *Zellerbach*, 37 Cal. 543.

(2)   The complainant does not charge improper conduct, but simply that he considers the price inadequate and unjust; and hence he prays for a receiver and a sale of the property by auction. Ordinarily when a court orders a sale it can only be done by auction. A court cannot negotiate a private sale, and it orders an auction as the fairest chance for all parties to bid and buy. But when the parties in interest have negotiated a sale which is fair to all concerned, and there is nothing to show that a larger price may reasonably be expected, it does not follow that an auction sale would be ordered. This question was considered in *Quidnick Co.* v. *Chafee*, 13 R. I. 402, in which the trustee had an offer for the entire property, approved by nearly all the creditors.

Then other parties intervened, agreeing to bid the amount named at auction, and the court ordered a sale by auction. In the present case there is no evidence that anybody is willing to give as much as the offer proposed, or that there is any reason to suppose that it will bring as much or more. The only testimony put in by the complainant is that the tools will probably bring more than they are valued at by the company, while as to the bulk of the property, the real estate, &c., there is no evidence of market value. Moreover, the complainant does not show that he desires to bid upon the property himself, or that he knows of any one who would bid at a sale. In this absence of evidence that a larger total might be expected from an auction sale we see no reason to disturb the agreement already made, which, upon the testimony given, seems to be fair.

The complainant relies strongly on *Mason* v. *Pewabic Co.*, 133 U. S. 50. In that case the court had appointed a master to value the property, which he reported to be nearly $500,-000. A majority of the company had arranged a sale to themselves at $50,000. Naturally, in view of such gross inadequacy, the court ordered a sale by auction. The case was very different in its details from the case before us.

In *Wilson* v. *Prop'rs Central Bridge*, 9 R. I. 590, the city of Providence had control of the corporation and had sold the corporate property to itself. The court restrained the city from taking possession and ordered a sale by auction. That, too, was a different case from this one.

The court is bound to look to the interests of all parties, and especially to protect the rights of a minority from oppression and fraud. But where, as in this case, no such thing is charged, and nothing is shown to lead to the belief of a better total price, the complainant makes no case for interference. To show that movable tools may be sold at a price somewhat, but not largely, higher than that at which they are scheduled, is quite a different thing from showing that the plant as a whole would sell for more than the price offered. To set aside the sale under these circumstances would be to risk a certainty for an uncertainty, without any testimony on which

to base a hope of benefit to the stockholders from such inter-
ference.    We see no reason for such a step in the dark.

Bill dismissed.