THE B. F. GOODRICH COMPANY *v.* McEACHIN, ADM'X.

4-5325                                          124 S. W. 2d 833

Opinion delivered January 16, 1939.

508

*House, Moses & Holmes, H. B. Solmson, Jr.,* for appellant.

*Frank Wills, Charles Mehaffy* and *Osro Cobb,* for appellee.

BAKER, J. In the discussion of the matters arising on this appeal the appellant will be referred to as such, or as the Goodrich Company, and each of the appellees will be referred to generally by name, or the whole number of them as appellees.

This litigation arose out of an effort on the part of all the parties concerned to revive and rehabilitate a local corporation, Finley-Turner, Inc. This corporation

was doing business at the corner of Broadway and Capitol avenue, in the city of Little Rock, and had somewhat advantageous contracts with the Goodrich Company. The Goodrich Company supplied tires and other automobile accessories and maintained a large warehouse or distributing center in Little Rock to supply merchants in other communities. During the depression years the indebtedness owing by the Finley-Turner, Inc., to the Goodrich Company gradually built up until the result was depressing upon both creditor and debtor. The Goodrich Company became uneasy, sent representatives from the home office to make investigations, increased the line of credit, extended times of payment, made many investments, but without satisfactory results. Finley-Turner, Inc., instead of responding to the efforts made by all the parties to operate upon satisfactory business principles, continued each year to lose money and to become somewhat more greatly indebted than before. Finally Finley and Turner, two members of the Finley-Turner, Inc., extended themselves by borrowing money individually and finally by putting up their capital stock in the Finley-Turner corporation. The Goodrich Company, in an effort to keep Finley-Turner, Inc., a going concern, bought the capital stock from the stockholders of the Finley-Turner, Inc., and finally the stock of both Finley and Turner was delivered over and canceled in satisfaction of debts made by them individually for the benefit of the company. Before this was done, or about that time, Finley-Turner, Inc., was owing the Goodrich Company more than $40,000. The Goodrich Company elected a majority of the directors of the Finley-Turner corporation. The operators, however, of the Finley-Turner corporation, both Mr. Finley and Mr. Turner, continued in the management and control of the company. The situation grew worse until a critical condition existed, wherein the corporation owed the Goodrich Company fifty or sixty thousand dollars, the exact figures being immaterial. Auditors of the Goodrich Company were sent to audit the books of the local corporation and at that time the entire stock of merchandise and other properties of the local corporation were gone over and valued according to what was

then believed to be a true market value of all the property. It was found at this time that a considerable part of the stock of the local corporation had depreciated by reason of obsolescence. As an illustration it is said many automobile rims, which at the time of their purchase represented substantial values, had, by reason of changed devices and models, become of no practical value, except for the amount of metal that might be regarded as junk. A few of their radios were still carried upon the books of the company at their original price, though it was determined that they could not be sold for anything near such sum. Finley and Turner, the men who had originally owned a larger part of the capital stock and who had operated this establishment, helped fix this new assessment of values. This audit of the books of the company, at that time, discloses the fact not known prior to that date that even without this new assessment of values, the corporation was insolvent. This new assessment of values, however, reduced the book value of the assets nearly $25,000.

There is nobody in this whole controversy that takes issue with this account on the part of Finley and Turner and the officers, or agents of the Goodrich Company, in the revaluation of the assets of the company, and in an effort to determine the true value of such assets. We think it must be conceded by all who have any knowledge of the situation that the assets of the corporation, after this revaluation process, were worth at least $25,000 less than the admitted liabilities. At that particular time business had not revived to the extent that anyone could be sure of any very great development in any new business that would aid in paying off the indebtedness. Goodrich Company was by far the largest creditor. Debts owing by Finley-Turner were canceled out by the surrender and cancellation of their stock. While this may not have been entirely proper, yet at the time it was done, nor within any reasonable time thereafter was any complaint made by any interested party. In truth it was one of the ineffectual efforts to place the local corporation upon some kind of profit-earning basis. The corporation owed one of the local banks about $12,500 which it

was unable to pay. The Goodrich Company advanced money and compromised this indebtedness by paying for it $8,000 and increased in that manner the indebtedness owing it.

All the appellees mentioned in this suit were owners of preferred stock in the Finley-Turner, Inc. No dividends had been paid them in some time. In fact, if we understand the record, the last dividends declared or paid were in 1929.

It was finally decided that the corporation could never pay the Goodrich Company and pay any dividends even upon preferred stock, and that the only way to rehabilitate the corporation and put it upon a profit-earning basis was to cancel off a large part of its indebtedness and to take a large part of the indebtedness not canceled off and convert that into capital stock as representing the investment in the corporation by the Goodrich Company. But this plan was subject to certain objections, one of which was that it would place the Goodrich Company, which at that time was a creditor of the local corporation, in an inferior position if it took its debt in stock. One effect was to increase the value of the preferred stock without any new investment or aid from the preferred stockholders. The Goodrich Company was unwilling to assume this inferior position and argued that either the preferred stockholders must surrender their stock in order that the corporation might be reorganized or that they would have to take such steps as might be necessary for their protection as a creditor. Finley, who had been to that time one of those in actual control and management of the local corporation, undertook to secure a surrender of all the preferred stock to him as a trustee. In this he was aided by the officers and agents of the Goodrich Company. They helped him work out, prepare and deliver a letter to the stockholders which was accepted by the preferred stockholders and who in response thereto surrendered their stock. This letter written by Joe Finley was more than it purports upon its face, as a proposition from him, and that fact is so admitted and acknowledged by the Goodrich Company at this time. The Finley letter is as follows:

"Little Rock, Arkansas
"June 7, 1933.

"Dr. F. W. Carruthers,
"Exchange Bank Bldg.,
"City.

"Dear Sir:

"This acknowledges receipt from you of Certificate No. 102 for 40 shares of preferred stock of Finley-Turner, Inc., upon the following understanding: This stock will be transferred to my name and will be pledged with the B. F. Goodrich Rubber Company to secure advances made by the B. F. Goodrich Rubber Company to or for use of Finley-Turner, Inc.

"At the present time all of the Common Stock of the Company is pledged with the B. F. Goodrich Rubber Company, and if all the outstanding Preferred Stock of Finley-Turner, Inc., can be delivered, upon the same basis, to the B. F. Goodrich Rubber Company, they have indicated their willingness to co-operate with Finley-Turner, Inc., in revamping the financial structure of our Company, by writing off a proration of the indebtedness due the B. F. Goodrich Rubber Company and by capitalizing some of Finley-Turner's indebtedness to the B. F. Goodrich Rubber Company, in order that Finley-Turner, Inc., will be in position to again show a net profit on its operation.

"From these net profits the net obligation to the B. F. Goodrich Rubber Company will be liquidated. If and when said indebtedness has been paid, the stock will be returned to me and 40 shares of new Preferred Stock will be issued to you.

"Assuring you of the appreciation of all concerned for your co-operation in this instance, I am

"Respectfully yours,
"(signed) J. F. Finley."

Without attempting to analyze the Finley letter, which will be referred to hereafter as such, it is perhaps better that the subsequent developments be stated.

After the preferred stock had been surrendered, leaving the Goodrich Company in the dominant position of creditor, which it had occupied at all times, it then

charged off about twenty-eight or thirty thousand dollars of its indebtedness. It issued $40,000 of capital stock which was paid for by indebtedness due it by the local corporation. There was still an indebtedness of little more than $3,000 not charged off or converted into capital stock.

When this development had been reached in the process of reorganization it was discovered that the new corporation had approximately thirty-one or thirty-two thousand dollars in property and merchandise assets and that its admitted indebtedness was less than $4,000. This condition would have shown an increase in assets of approximately the same value as the indebtedness charged off, and the value of the local assets, which upon a statement of assets and liabilities, would have subjected the local corporation to a large income tax, according to the experts to whom the problem was submitted, when considered upon the so-called book earnings or increase of assets over liabilities. Such increase did not in fact exist and the company was no more able to pay a large sum in income taxes than it had been at any time previous to that date for the several years past.

It was finally determined, when this situation arose, that the best method of showing and expressing the true condition of the corporation, was a complete reorganization, and in furtherance of that plan there was organized by the Goodrich Company and by Finley and Turner, the moving forces of the old corporation, a new corporation known as the Finley-Turner Tire Company, and to this new corporation was transferred the assets of the old corporation and it did not assume any of the old debts or liabilities except the net sum of money then due Goodrich Company. About 51 per cent. of this stock was sold after issue, as we understand the record, by the Goodrich Company to J. F. Finley and it was the understanding and agreement that after this stock was paid for by Finley from his share of the net earnings in the new corporation, or otherwise, it should be delivered to him for himself and as trustee for the preferred stockholders in the Finley-Turner, Inc.

This new corporation continued for nearly a year, but notwithstanding the fact of its advantageous position, in that it was able to buy gasoline at 1c a gallon cheaper than other local gasoline dealers, and in that it had the advantage of buying as a favored unit in the Goodrich organization, it was unable to make any profits, and during the period it functioned it lost almost an additional $10,000. There was nothing with which to pay debts. It had practically an unlimited credit with the Goodrich Company and was unable to show any progress or development during the entire period it attempted to operate as a new organization. According to the record, it seemed unreasonable to expect the Finley-Turner Tire Company to continue in business except at a loss to itself and a loss to the Goodrich Company, which had stood by and served its every requirement for additional credit, merchandise and supplies. With this loss continuing to mount and repeating the experiences of the former corporation, the Goodrich Company, which had now become practically the sole creditor and whose employees were its stockholders, took over the corporation and operated it thereafter as the Goodrich Silvertown Stores.

The several appellees filed their suits against the Goodrich Company, alleged the Finley letter and explanations made of it by officers and agents of the Goodrich Company, as a contract fixing and establishing their rights, and a breach of that contract by the Goodrich Company, and the consequent loss by such preferred stockholders of the values of the respective shares owned by each of them.

The defense of the Goodrich Company was a denial of the breach of the contract and insistence upon its part that it had substantially in all respects performed each part of the agreement as set forth in the so-called Finley letter, and further that inasmuch as the capital stock of the Finley-Turner, Inc., was without value even though there had been a breach of the agreements set forth in the Finley letter, such breach had not contributed to any loss to said stockholders, inasmuch as said stock was at no time of any value for a considerable length of

time prior to the surrender of it by the preferred stock-holders to J. F. Finley.

The foregoing statements and facts and conclusions are substantially correct, though no effort has been made to show or give any exact figures for the reason that such minute detail will in no manner be helpful in the solution of the problems presented.

A considerable volume of evidence is found in the record and only that portion will be considered in stating our conclusions which we think necessary to a complete understanding of the matters in controversy.

The issues were tried resulting in a jury verdict for 25 per cent. of the face value of the preferred stock owned by each of the appellees. The appeal of the Goodrich Company is a challenge to the correctness of the verdict and consequent judgments.

The issues presented are largely those arising out of admitted facts and not of disputed questions of fact. Indeed, we think it may be said that every substantial fact affecting the rights of the parties to this suit is fairly stated by counsel for the respective parties and without dispute, except the resulting declarations of law arising out of such facts as a determination of the rights of the parties.

Our conclusions, therefore, will be stated as concisely as we are able after having expressed this view of the melancholy results of these large but unprofitable investments of all the parties.

The Finley letter copied above is one written to Dr. F. W. Carruthers. A similar letter or receipt was delivered to each of the appellees. The only difference in the letter copied in this opinion and the one delivered to the other parties is in the name of the addressee and in the number of the stock certificate and designated shares of stock owned by the addressee. This letter or contract, as it is called in the briefs, shows that it was the intention that the preferred stock delivered over to Finley after it was transferred to J. F. Finley, would be pledged to the Goodrich Company to and for the use of Finley-Turner, Inc., so if we assume that these transfers were made in good faith, then the stock was pledged from and after

the date of the transfer in 1933 to the creditor, the Goodrich Company. All the common stock had already been pledged or sold to it, and it was then agreed that if the outstanding preferred stock be delivered upon the same basis, the Goodrich Company had expressed its willingness to co-operate with the Finley-Turner Company in revamping its financial structure and in writing off a proration of the indebtedness to the Goodrich Campany and in capitalizing some of that indebtedness.

We understand that the parties meant that after a surrender of this stock, by pledging it so that it became subservient to or under the control of the Goodrich Company, the Goodrich Company would be willing to cancel or charge off as an actual loss a part of its indebtedness. The exact amount was not agreed upon, but it must be said that the understanding was such that a sufficient amount would be charged off so that Finley-Turner, Inc., would be in a position to show net profits or earnings without having to devote all such earnings to the payment of the large amount of indebtedness that had accrued, but still another unnamed amount owing to the Goodrich Company would be paid by the issuance of capital stock by the Finley-Turner Company, and this amount, though not stated, was to be a sufficient amount to leave not an unreasonable or extremely large indebtedness which would continue the insolvency of the corporation.

Complaint is not made, as we understand from the argument of all the parties, that the Goodrich Company did not act in the utmost of good faith in the amount charged off, or in the amount that it considered paid by the issuance of capital stock to it. Nor is there any objection made that the amount of indebtedness remaining unpaid was out of proportion to the capital stock issued, or to the amount of assets owned by Finley-Turner, Inc. That amount was $3,865.66, which, of course, showed quite a material reduction from the more than $75,000 indebtedness that was owing at the time the Finley-Turner Tire Company was incorporated.

The alleged breach relied upon by the appellees is that the agreement was from the net proceeds, the net

obligation, that is to say, the $3,865.66 owing to the Goodrich Company would be liquidated and that the Goodrich Company had no right, in its operation or control of the Finley-Turner Company or the Finley-Turner Tire Company to take over the assets of the company to satisfy this net indebtedness. We do not agree with that theory or contention made on the part of appellees, who insist that it is expressed or undisputed in the language used in the contract. In the first place, all the facts disclose that Finley-Turner, Inc., was indebted in so large an amount that it was wholly insolvent and it was recognized that its ability to pay the indebtedness was hopeless. The Goodrich Company refused to charge off this indebtedness in a way that even the preferred stockholders would be in position to be preferred or have the advantage over it as a creditor. At that time, as a creditor, it had an advantageous position over even preferred stockholders and this method of having a surrender of this preferred stock and pledging the same to the Goodrich Company was intended, as to this particular part of the proceeding, to make the Goodrich Company safe as to the remaining or net indebtedness not charged off or capitalized and also by the express terms of the contract to justify the extension of further credit to enable this faltering company to continue in business. It must appear, when these facts are considered with others, including the admitted fact that during the succeeding months, almost a year after the reorganization of the Finley-Turner Company, and which operated as the Finley-Turner Tire Company, there was an additional loss of approximately $10,000.

It will be remembered that J. F. Finley was one of the owners, the manager, and almost in sole or exclusive charge of Finley-Turner, Inc., but he was the trusted agent of the preferred stockholders, in whose hands the preferred stock was delivered to be by him pledged. No bad faith, mistake, or even bad judgment is urged as to the conduct of J. F. Finley in acting under the express authority given him. It is not urged that there were any earnings by which these net debts might have been paid or that would have entitled any stockholder to a return of his capital stock. Instead of these net debts

being the only amount due, Goodrich Company was confronted with a situation whereby the advanced money added to the enormous sum charged off and represented by capital stock as unpaid indebtedness, there was a loss of about $10,000 and another year would have represented perhaps a similar amount or sum of money for continued operation.

It is not urged that the company was not permitted to operate for a sufficient length of time to be in a position to earn money upon the investment, but it is urged, for some unaccountable reason, that since the Goodrich Company could have been paid only from net earnings, as to the past-due indebtedness, it could not cease to support or continue the losing or failing corporation. There was no agreement for such continuation or indulgence on the part of the Goodrich Company, nor is there any legal obligation on the part of any creditor of the corporation to continue to support and maintain it as a losing investment or adventure in the absence of a contract so to do. At most, in this case there was an understanding or contract arising out of the Finley letter that such advances would be made as were made under the advantageous position occupied by the new corporation to enable it, if it were possible to do so, to show its ability to rehabilitate itself.

J. F. Finley, the trusted agent of the preferred stockholders, continued in charge of the business and there was still no charge of bad faith or improper conduct on the part of the Goodrich Company or its officers, or agents.

We do not think any act of bad faith is proven or established in any respect against the Goodrich Company. It abused no legal right or privilege, but at that time did only what it was authorized by law to do having control of all the capital stock.

Rightful possession of assets was delivered to it in satisfaction of the indebtedness owing to it. Finley and Turner, as individuals, have lost perhaps more than anybody else. They had been in actual charge and control. They knew all the facts and circumstances. They have charged no bad faith, but bowed to the inevitable result

following the depression and lack of profitable business. Certainly at no time before the pledge of this preferred stock, for a number of years, was the capital stock worth anything at all. It is argued that the common stock was sold for 25 cents on the dollar as a book value, but it seems now to be admitted that this book value was fictitious for the reason that much obsolete merchandise was carried at original invoice prices and not at any thing approximating its actual value at the time the common stock was deemed worth 25 per cent. There never was a time after the surrender of this stock, during the continued existence of Finley-Turner, Inc., that that company was solvent. It could not have paid its debts. There was more than a $40,000 deficit. In the reorganization the Goodrich Company put up the entire capital stock and the method of capitalizing these enormous debts is not questioned, perhaps could not be by the preferred stockholders, who, through Mr. Finley, their agent, participated therein. It was all pledged for such advancements as were made by the Goodrich Company, and if it had had any value, no doubt Goodrich Company would have resorted to that value first to have satisfied its claim.

No effort has been made to show by any proof in this record that from and after the day of the pledge of this stock by the several preferred stockholders it ever had any value whatever and appellees' case has wholly failed because it has shown no loss in that respect.

We present as conclusive of the factual controversy the admitted proposition that the preferred stock amounting to $6,000, was pledged for the advances, after the new organization, to June, 1935, and that these advances amounted to several thousand dollars more than the face value of the stock. These advances have not been paid. Further, after that date, when the Goodrich Company had attempted to continue operations in its own name and right, it offered in proof the fact that it continued to lose money. This proof was held inadmissible.

This state of the record, as shown by the foregoing admitted facts, must be such as to be determinative of the rights of all parties, without serious consideration of the interesting questions of law presented and argued.

Appellees do not seriously urge that the Goodrich Company should have continued to make advances in the face of continued losses, but argue only that when it took over the assets, such taking over was a breach of the contract. We do not think so, but we consider that the foregoing factual presentation conclusively shows that even if there were such a breach, the preferred stockholders suffered no loss as their stock was pledged for these advances and there is no way to avoid the effect of that pledge.

We think the Goodrich Company, in the exercise of good business discretion, had the right to elect whether it would continue to face large losses of operation, to rehabilitate a constantly losing and failing corporation, and that the law justified it, under the facts, since it was the owner and holder or, at least, in control of all the capital stock, in taking over all assets to apply on liabilities.

The following authorities seem to support that contention: 4 Thompson on Corporations (3rd Edition), § 2505; *Phillips* v. *Providence Steam Engine Co.*, 21 R. I. 302, 43 Atl. 598, 45 L. R. A. 560; *Rhea* v. *Newton*, 262 Fed. 345. Under similar conditions the authorities seem to be practically unanimous and to the same effect.

We think it clear the judgments of the circuit court are not supported by any substantial evidence; that the court erred in not directing verdicts for the appellant as to each of the appellees.

The judgments are, therefore, reversed, and the actions dismissed.